G. Ralph Branton v. Commissioner.
G. Branton v. Commissioner
Docket No. 4542.
United States Tax Court
1946 Tax Ct. Memo LEXIS 291; 5 T.C.M. (CCH) 16; T.C.M. (RIA) 46017; January 16, 1946
*291 Peter S. Rask, Esq., P. J. Coffey, Esq., Harold N. Rogers, Esq., and Walter L Stewart, Esq., for the petitioner. Harlow B. King, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $6,723.01 in the income tax of the petitioner for the calendar year 1941. The only issue is whether the Commissioner erred in adding to the income of the petitioner $11,250, either as dividends or compensation for services. Findings of Fact The petitioner is an individual who resides in Des Moines, Iowa. He filed his separate individual return for 1941 with the collector of internal revenue for the district of Iowa. The petitioner has been engaged for many years in the motion picture theatre business. He came to Iowa from Boston in 1932 at the request of Paramount and remained to manage a group of theatres in which Paramount had an interest. The theatres had not been successful. Paramount indicated that the petitioner could acquire an interest in whatever he developed and he, in turn, told his wife that she could acquire that interest. He did that to induce his wife to move to the west. A. H. Blank was also interested *292 in the theatres. He was to furnish capital. Blank and the petitioner had an oral agreement that they would share with Paramount in owning whatever they could develop from the enterprise. A corporation known as Tri-States Theatre Corporation was organized in 1933. It acquired and operated the theatres. It had 1,000 shares of stock outstanding at all times material hereto. Paramount owned 500 class B shares and the 500 class A shares were issued to Blank. The petitioner understood that he was to be permitted to purchase from Blank at cost to Blank 200 classa shares. But Blank later contended that the operation was larger than he had anticipated and refused to recognize the petitioner's right to demand more than 75 shares. The business of the corporation was successful. Dividends were declared beginning in 1936. Blank recognized the petitioner's right to the dividends upon 75 shares and paid amounts equivalent thereto to the petitioner. The petitioner kept insisting that the shares to which he was entitled should be issued to him. A certificate for 75 shares was issued to him on December 23, 1939, subject to a number of restrictions and conditions. The petitioner gave his note to *293 Blank for the purchase price of $17,625, but never paid anything on account of the principal. He returned the stock to Blank on November 11, 1941 and cancelled his note. Blank, on the same day and as a part of the same transaction, had the 75 shares transferred to the petitioner's wife for the same price, $17,625, taking the wife's note for $17,625. All stockholders agreed to permit the changes necessary to make this transfer possible. The transfer was made subject to several conditions and rights in Blank to reacquire the stock. The certificate issued in the name of the wife was held in escrow by a bank. The wife had separate property, kept separate accounts, and eventually paid the note from her own funds. The 75 shares of stock were worth more than $17,625 on November 11, 1941. The Tri-States Theatre Corporation declared and paid dividends during 1941 as follows: Amount
Declaration date
per share
Date paid
March 14
$ 50
March 22
June 28
50
June 30
September 26
50
September 26
December 17
150
December 17
The petitioner received and reported dividends of $11.259 on the 75 shares which stood in his name prior to November 12, 1941. He never held *294 any stock of the corporation thereafter. He did not receive, directly or indirectly, the dividend of $11,250 declared and paid on the 75 shares standing in the name of his wife on December 17, 1941. The only salary or compensation for services received by the petitioner during 1941 was $16,200, received as general manager from Tri-States Theatre Corporation and reported on his return. Opinion MURDOCK, Judge: The respondent contends that Blank could not legally sell the 75 shares and that the $11.250 represents additional compensation to the petitioner, either from Blank or from the corporation. The petitioner agrees that he did not own the shares when the dividend in question was declared and paid. The evidence shows that the $11,250 was paid by the corporation as a dividend to the petitioner's wife. It was not received by the petitioner. It was in form a regular dividend, paid as such upon shares standing in the name of the wife, which shares the wife had purchased and for which she had given her note. The note was later paid. The petitioner had nothing to do with the shares after November 12, 1941. The record does not justify a finding that the $11,250 was paid as compensation *295 to anyone. The petitioner received a regular salary in a substantial amount for managing the corporation. He reported that salary and it is not involved in the present controversy. The demands which he made upon Blank for shares of the corporation were for an interest, ownership, in the corporation, not for salary or compensation. He intended to pay for those shares. Thus, the $11,250 did not represent earnings of the petitioner taxable to him under such cases as ; , regardless of whether or not Blank could convey good title to the shares to the petitioner's wife. The Commissioner erred in adding the $11,250 to the petitioner's income. Decision will be entered under Rule 50.